**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 20, 2016

LETTER TO COUNSEL

    Re:  *Daniel M. Silver v. Commissioner of Social Security*,
        Civil No. SAG-15-3453

Dear Counsel:

    On November 12, 2015, Daniel M. Silver petitioned this Court to review the Social Security Administration's denial of his mother's claim for Children's Supplemental Security Income ("Children's SSI") on his behalf, and the denial of his claim as an adult for SSI. (ECF No. 1).  I have considered both parties' cross-motions for summary judgment, and Mr. Silver's reply. (ECF Nos. 18, 20, 25).  I find that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2016).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were applied.  42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987).  Under that standard, I will grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).  This letter explains my rationale.

    As a child, Mr. Silver was found disabled in 2003 and received Children's SSI.  (Tr. 459).  In 2007, his benefits were terminated due to failure to provide information.  *Id.*  A new application for benefits was protectively filed on Mr. Silver's behalf on July 13, 2007.  (Tr. 698-704).  The claim was denied initially and on reconsideration.  (Tr. 140-43, 145-46).  A hearing was held on July 21, 2010, before an Administrative Law Judge ("ALJ").  (Tr. 28-63).  Following the hearing, the ALJ issued an opinion denying benefits on July 30, 2010.  (Tr. 7-27).  The Appeals Council ("AC") denied a request for review. (Tr. 1-6).  Subsequently, however, this Court remanded the case for further evaluation.  A second hearing was held before an ALJ on December 4, 2014.  (Tr. 488-541).  After that hearing, on March 25, 2015, the ALJ again denied benefits.  (Tr. 456-87).  Once again, the AC denied a request for review, (Tr. 447-52), meaning that the ALJ's 2015 decision is the final, reviewable decision of the Agency.

    **Children's SSI**

    The ALJ evaluated Mr. Silver's claim using the three-step sequential process for claims involving Children's SSI, as set forth in 20 C.F.R. § 416.924.  First, the ALJ determines whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(a), (b).  If the child has not engaged in substantial gainful activity, the ALJ proceeds to step two and determines whether the child has a severe impairment or combination of impairments.  § 416.924(a), (c).  At step two

"[i]f [the child] do[es] not have a medically determinable impairment, or [the] impairment(s) is a slight abnormality or combination of slight abnormalities that cause[] no more than minimal functional limitations," then the ALJ will determine that the child is not disabled.  § 416.924(c). However, if the ALJ determines that the child has a severe impairment or combination of impairments, then the ALJ proceeds to step three of the evaluation to determine whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  § 416.924(d).

For children, listings describe impairments that cause marked and severe functional limitations.  § 416.926a.  In general, a child's impairment(s) is of "listing-level severity" if it causes "marked limitations in two domains of functioning or an extreme limitation in one domain" of functioning.  *Id.* (internal quotations omitted).  However, an impairment may meet a listing even if it does not result in marked or extreme limitations if the listing in question does not require such limitations to establish that the impairment is disabling.  § 416.926.  If an impairment(s) does not meet a listing, an ALJ may determine that the impairment(s) medically equals a listed impairment if: (1) there are other findings related to the child's impairment, not included in the listing requirements, that are at least of equal medical significance to the required criteria; (2) the child has an impairment not described in the listings with findings that are at least of equal medical significance as a closely analogous listed impairment; or (3) if the child has a combination of impairments, none of which meets a listing, but which result in findings that are at least of equal medical significance as a closely analogous listed impairment.  *Id.*

If an impairment(s) neither meets nor equals a listing, an ALJ may determine that the child's impairment(s) is functionally equivalent to a listed impairment.  The ALJ must evaluate the "whole child" when making a finding regarding functional equivalence. Generally, the ALJ must first consider how the child functions daily in all settings as compared to children of the same age who do not have the impairments. In other words, the ALJ considers the child's activities including everything a child does at home, at school, and in the community on a daily basis. Next, the ALJ must assess the child's capacity to perform or not perform activities and assigns each activity to any or all of the six domains or broad areas of functioning. SSR 09–1p,[3] 2009 WL 396031 at *2 (Feb. 17, 2009). The six domains are (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  An impairment functionally equals a listing-level severity if it is determined that a claimant has *marked* limitations in two domains or an extreme limitation in one domain.  § 416.926a(d).

The ALJ proceeded in accordance with applicable law at all three steps of the evaluation. The ALJ's findings at steps one and two favored Mr. Silver's claim.  At step one, the ALJ found that Mr. Silver had not engaged in any substantial gainful activity at any time relevant to the application.  (Tr. 464).  At step two, the ALJ found that Mr. Silver suffered from the severe impairments of borderline intellectual functioning and history of attention deficit hyperactivity disorder.  *Id.*  At step three, however, the ALJ found that Mr. Silver did not have an impairment

Case 1:15-cv-03453-SAG   Document 26   Filed 10/20/16   Page 3 of 8
*Daniel Marquise Silver  v. Commissioner of Social Security*
Civil No. SAG-15-3453
October 20, 2016
Page 3

or combination of impairments that met any listing. (Tr. 465-74). The ALJ specifically considered Listing 112.05 for intellectual disability and Listing 112.11 for ADHD, and expressly indicated the criteria she found to be absent. (Tr. 465-66).

The ALJ then proceeded to determine whether Mr. Silver's impairments functionally equal a listing. The ALJ first evaluated the "whole child" in making findings regarding functional equivalence. In doing so, the ALJ reviewed the testimony of Mr. Silver and his mother, and the child function report submitted by Mr. Silver's mother. (Tr. 466-67). The ALJ also conducted a review of Mr. Silver's medical and education records from the relevant time frame. (Tr. 467-68). The ALJ concluded that the information provided by Mr. Silver and his mother was "not entirely credible" and assigned it "limited weight," because the extent of the limitations was unsupported by medical evidence and appeared to be based primarily on subjective complaints. (Tr. 467).

Finally, the ALJ assigned weight to the opinions of various educational and medical sources. The ALJ assigned "little weight" to a questionnaire completed by special education teachers who had taught Mr. Silver for just three months. (Tr. 468-69). The ALJ noted that those teachers had opined that Mr. Silver was "more focused whenever he has his medicine," and that the limitations they suggested seemed inconsistent with other evidence, including a consultative examination conducted the same month as their questionnaire was drafted. *Id.* The ALJ assigned "some weight" to a questionnaire completed in 2010 by a special education teacher who had been working with Mr. Silver for about nine months. (Tr. 469). That teacher opined that Mr. Silver could "generally understand instructions if thoroughly explained to him." *Id.* The ALJ further assigned "great weight" to the opinions rendered by two non-examining State agency consultants, Drs. Sarno and Edmunds, who both made findings consistent with the ALJ's conclusions in the relevant domains of functioning. *Id.* Specifically, the ALJ concluded that Mr. Silver had (i) *marked* limitation in acquiring and using information; (ii) *less than marked* limitation in attending and completing tasks; (iii) *less than marked* limitation interacting and relating with others; (iv) *no limitation* in moving about and manipulating objects; (v) *less than marked* limitation in caring for himself; and (vi) *no limitation* in health and physical well-being. (Tr. 469-74). Because Mr. Silver did not have an impairment or combination of impairments resulting in either *marked* limitations in two domains or an *extreme* limitation in one domain, his impairments did not functionally equal the severity of any listed impairments.

Mr. Silver asserts that the ALJ erred in various ways in assessing his eligibility for Children's SSI. First, he argues that this Court is entitled to review the Commissioner's 2007 termination of his Children's SSI benefits, and that principles of *res judicata* mandate an award of Children's SSI benefits. Second, he contends that the ALJ improperly deemed several of his diagnoses to be non-severe. Third, he argues that the evidence supports a determination that he met or equaled the requirements of Listing 112.05. I disagree.

First, Mr. Silver (or, at the time, his mother acting on his behalf) took no action to exhaust his administrative remedies or to appeal the 2007 termination of his Children's SSI benefits. Importantly, 42 U.S.C. § 405(g) requires that a civil action be commenced within 60

Case 1:15-cv-03453-SAG   Document 26   Filed 10/20/16   Page 4 of 8
*Daniel Marquise Silver  v. Commissioner of Social Security*
Civil No. SAG-15-3453
October 20, 2016
Page 4

days of the mailing of notice of a final decision of the Commissioner.  Mr. Silver did not file his lawsuit until more than eight years later.  It is unclear from the record whether or not the ALJ in this case made an express decision about reopening the termination, but, even if she did, her determination not to reopen the case is within her discretion and is not subject to appeal.  *See McGowan v. Harris,*  666 F.2d 60, 67 (4th Cir. 1981) (*citing Califano v. Sanders,* 430 U.S. 99 (1977)).  There is simply no evidence that she engaged, in this case, in any reconsideration of the 2007 decision on the merits.  Mr. Silver's arguments about advice his mother may have received from Social Security employees, Pl. Reply 11-12, do not alter the limited jurisdiction this Court has to review administrative actions.  *See*  42 U.S.C. § 405(g).

Moreover, principles of *res judicata* do not dictate a particular result with respect to Mr. Silver's 2007 application for benefits.  The ALJ appropriately reviewed the 2007 claim using all of the evidence presented at that time.  It is readily evident from the record that Mr. Silver's condition evolved over the years, and there is insufficient proximity between 2003 and 2007 to suggest that the finding of disability in 2003 would necessarily carry over four years later.  In fact, the very reason benefit recipients have to provide regular documentation of disability is to allow reevaluation of eligibility where there are changed medical circumstances.

Next, with respect to Mr. Silver's other diagnoses including Tourette's syndrome, speech impairment, and traumatic foot and shoulder injuries, the ALJ engaged in a thorough analysis explaining why she deemed them non-severe. (Tr. 464-65).  The ALJ described that symptoms of Tourette's syndrome were absent on examination and that consultative examiners had no difficulty understanding Mr. Silver's speech. (Tr. 465).  Although his receptive and expressive language skills were significantly below average, his fluency, articulation, and speech intelligibility were within normal limits, and he was able to use target vocabulary in grammatically correct sentences.  *Id*.  With respect to his foot injury, Mr. Silver had emergency care on January 17, 2011 for a gunshot wound and a follow-up excision of a bone fragment two months later, with no further treatment until after the age of 18.  *Id.*  Mr. Silver was also treated in October, 2010 for a stab wound to the right shoulder, but had no further treatment for that impairment after that date.  *Id.*  Accordingly, the ALJ provided substantial evidence to support her conclusion that none of those impairments were severe for purposes of assessing Children's SSI.

Finally, with respect to his claim for Children's SSI, Mr. Silver contends that the ALJ should have found that he met or equaled Listing 112.05 (intellectual disability).  However, Mr. Silver asserts, without explanation, that his WISC-IV test as a child was two full standard deviations below the norm, as required to meet the listing. Pl. Mot. 33.  In fact, Mr. Silver's score was 77, and with a standard deviation of 15, a score of 70 or below would be required to meet the listing.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(c) (noting that the mean is 100 and the standard deviation is 15). Accordingly, Listing 112.05 was not met.

In order to functionally equal Listing 112.05, as described above, Mr. Silver would need to establish "marked" limitations in two functional domains. The ALJ determined Mr. Silver to have marked limitations in the domain of acquiring and using information, but found "less than

marked" limitations or "no limitation" in the other relevant domains.  Mr. Silver contends that the ALJ should have found "marked" limitations in the areas of "attending and completing tasks" and "interacting and relating with others."  Pl. Mot. 35-38.  However, the ALJ supported her "less than marked" conclusions with substantial evidence.  Specifically, with respect to "attending and completing tasks," the ALJ relied upon a November, 2007 test showing that Mr. Silver's working memory score was at the "upper end of the low average range." (Tr. 471).  The ALJ also noted that Mr. Silver's first quarter report card in 2009 showed that he was passing all of his classes and that his individualized education plan ("IEP") recommended preferential seating to deal with issues regarding focus.  *Id.*  Finally, the ALJ relied upon the educational evaluation written by Mr. Silver's special education teacher in 2010, who noted that he was capable of independent work and required "slight help compared to other special education students in her class." *Id.*  With respect to social interaction, the ALJ relied upon evidence from Mr. Silver's mother and the consultative examiner regarding Mr. Silver's ability to engage in age-appropriate and understandable conversation.  (Tr. 472).  Mr. Silver's mother also reported that he generally got along with his classmates and parents, with the exception of hollering at his parents occasionally.  *Id.*  The ALJ also cited the results of a speech and language assessment demonstrating fluency, articulation, and speech intelligibility within normal limits, but receptive and expressive language skills that were significantly below average.  *Id.*  Finally, the ALJ considered Mr. Silver's 2009 IEP, which stated that Mr. Silver could use target vocabulary in grammatically correct sentences and that he would spontaneously seek help when unsure of a word's meaning.  *Id.*  This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence.  *See Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).  Although Mr. Silver cites to other evidence that could be used to support a contrary conclusion, in light of the substantial evidence relied upon by the ALJ, the ALJ's determination must be affirmed.

**Adult SSI**

The ALJ found that, after the age of 18, Mr. Silver continued to suffer from the same severe impairments of borderline intellectual functioning and history of attention deficit hyperactivity disorder.  (Tr. 474).  Despite these impairments, the ALJ determined that Mr. Silver retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: work limited to simple, routine tasks with occasional decision-making and no fast-paced production.

(Tr. 477).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Silver could perform work existing in significant numbers in the national economy, and that, therefore, he was not disabled.  (Tr. 480).

Regarding his adult claim, Mr. Silver raises three primary arguments on appeal.  First, he argues that the ALJ should have determined his left foot and right shoulder impairments to be

severe at step two.  Second, he contends that the ALJ erred in evaluating Listing 12.05.  Finally, he argues that the ALJ's RFC assessment was not supported by substantial evidence.  Each of Mr. Silver's arguments lacks merit and is addressed below.

First, Mr. Silver argues that the ALJ should have determined his left foot and right shoulder impairments to be severe.  Pl. Mot. 39-40.  The ALJ, however, provided a complete explanation of her evaluation of those impairments, citing to medical evidence reflecting that Mr. Silver had had no medical treatment for his right shoulder after attainment of age 18, and had essentially normal examinations of his foot, no impact on strength or ambulation, and no need for narcotic medication.  (Tr. 475).   The ALJ cited to substantial evidence in the form of medical records supporting her views.  The fact that Mr. Silver might point to other evidence suggesting the impairments to be severe (at least as to the left foot injury) does not therefore permit this Court to overturn the ALJ's determination.  *See Hays*, 907 F.2d at 1456.

With respect to the Listing analysis, Mr. Silver relies upon a psychological consultative examination conducted by Dr. Celozzi in 2013.  Pl. Mot. 41-42.  Dr. Celozzi conducted IQ testing and found a Full Scale IQ of 60.  However, Dr. Celozzi noted twice in his opinion that Mr. Silver "could have given better effort." (Tr. 1098, 1099).  While the ALJ did not use the terms "valid" or "invalid," it is evident from her analysis that she did not believe Dr. Celozzi's results to be valid, since she drew a contrast between the results of that testing and Mr. Silver's prior IQ test in 2007, which resulted in a significantly higher score.  (Tr. 479).  The ALJ found "that there is simply no objective evidence in the record to establish mental retardation," which would be required to meet the listing in question.   *Id.*  I also find no error in the ALJ's failure to assign weight to Dr. Celozzi's "opinion," as Mr. Silver suggests.  Pl. Mot. 41-42.  Dr. Celozzi's evaluation took the form of a consultative examination report, and is not a formal opinion as to Mr. Silver's capacity to work or eligibility for benefits.  As a result, the ALJ appropriately considered it as medical evidence but did not have to make an express assignment of weight.

Finally, Mr. Silver suggests that the ALJ did not support her RFC assessment with substantial evidence.  However, essentially, Mr. Silver's argument asks this Court to reweigh the evidence considered by the ALJ, and to assign more weight to the testimony of Mr. Silver and his mother and less weight to the medical sources credited by the ALJ.  That analysis is not permitted under the law.  *See Hays,* 907 F.2d at 1456*.*  This is a quintessential case in which the two sides draw different conclusions from the same evidence: the ALJ attributes Mr. Silver's poor grades to excessive absenteeism and lack of diligence, while Mr. Silver blames limited intellectual capacity, and the ALJ believes the result of Dr. Celozzi's IQ test is attributable to lack of effort while Mr. Silver believes that the gunshot wound may have caused his IQ to decline sharply.  Under the governing legal standards, however, so long as the ALJ supports her conclusions with substantial evidence, here derived from the medical and educational records, this Court is not charged with reassessing the evidence to see whether other conclusions can also be drawn.

Mr. Silver further argues that the ALJ's RFC assessment violated *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).  Pl. Rep. 9-10.  However, the ALJ here included a limitation to "no

fast-paced production." This Court has repeatedly deemed similar language adequate to address a moderate difficulty in concentration, persistence, or pace. *See, e.g., Gair v. Comm'r, Social Sec. Admin.,* Civil No. SAG-14-3652, 2015 WL 5774982 (D. Md. Sept. 28, 2015) ("I find that the ALJ adequately accounted for Mr. Gair's moderate limitation in concentration, persistence, or pace by limiting him to work with no strict production quotas."); *Chase v. Comm'r, Social Sec. Admin.,* Civil No. SAG-14-2961, 2016 WL 199410 (D. Md. Jan. 15, 2016) (holding that a limitation to "no production rate or paced work" satisfies *Mascio*); *Mason v. Comm'r, Social Sec. Admin.,* Civil No. SAG-14-3362, 2016 WL 225689 (D. Md. Jan. 19, 2016) (upholding a limitation to "work that does not require the satisfaction of a production pace").

Additionally, Mr. Silver claims that the ALJ erred by not resolving a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), because his RFC limited him to simple tasks but the jobs identified by the VE required an ability to carry out "detailed but uninvolved" instructions at a reasoning level of 2. Pl.'s Rep. 10-11. In *Henderson v. Colvin*, 643 F. App'x 273 (4th Cir. 2016) (unpublished), the Fourth Circuit found a conflict between "an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." 643 F. App'x. at 277. Reading *Henderson* broadly puts it in conflict with existing case law, which has repeatedly found that occupations with a reasoning level of 2 are consistent with a claimant's ability to perform simple, routine work. *See, e.g., Michel v. Comm'r Soc. Sec. Admin.*, No. SAG-13-2311, 2014 WL 2565900, at *3 (D. Md. June 5, 2014); *Blum v. Comm'r Soc. Sec. Admin.*, No. SAG-12-1833, 2013 WL 2902682, at *3 (D. Md. June 11, 2013); *see also Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no inconsistency between a job with a reasoning level of three and a hypothetical individual limited to "simple, concrete instructions"); *Hacket v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"). Ultimately, *Henderson* is distinguishable from the instant case because the ALJ did not limit Mr. Silver's RFC to "one-to-two step instructions," but rather to "simple, routine tasks." Consistent with the precedent cited above, and with the VE's own testimony in this case, "simple, routine tasks" are consistent with a reasoning level of 2. (Tr. 532) (VE testimony that "none of these would have detailed instructions, none of these jobs, because they're at the SVP two level"). Thus, as an unpublished decision creating non-binding precedent, *Henderson*, narrowly construed to suggest a conflict between the DOT definition of SVP 2 and RFCs limited to "one-to-two step instructions," does not require remand in this case.

Finally, in his reply, Mr. Silver argues that the ALJ failed to follow the Court's order from the first remand. Pl. Rep. 1-2. This appeal, however, assesses the legal adequacy of the new ALJ opinion, and does not measure compliance with instructions to correct deficiencies in the earlier opinion. An ALJ need not discuss every piece of evidence in the record, and this Court does not extrapolate a failure to consider relevant evidence from a failure to make reference to a particular record. The only requirement is that a reviewing court be able to determine from the opinion "what the ALJ did and why [s]he did it." *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n. 10 (4th Cir. 1999) (*citing Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998)); *see also Melgarejo v. Astrue*,

No. JKS 08–3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009) (holding that an ALJ's duty to explain his findings and conclusions on all material issues of fact or law is satisfied when a reviewing court can determine, from an ALJ's opinion and the evidence of record, how he reached his conclusion). In this case, not only can a reviewing court determine the basis for the ALJ's conclusions, but the medical records that were not expressly referenced predate the relevant period for the application. Accordingly, remand is unwarranted.

Thus, for the reasons given, this Court DENIES Mr. Silver's Motion for Summary Judgment (ECF No. 18) and GRANTS the Commissioner's Motion for Summary Judgment, (ECF No. 20). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/
Stephanie A. Gallagher
United States Magistrate Judge